WILLIAM J. KUHN, JR. AND ESTATE OF HELEN M. KUHN, DECEASED, WILLIAM J. KUHN, JR., EXECUTOR, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Kuhn v. Commissioner
Docket No. 4169-90
United States Tax Court
T.C. Memo 1992-460; 1992 Tax Ct. Memo LEXIS 483; 64 T.C.M. (CCH) 488; August 13, 1992, Filed *483 Decision will be entered under Rule 155. P leased certain property to his controlled corporation at a rate assumed, arguendo, to be below market. P made no substantial personal use of the property, nor was such personal use a consideration at the time of purchase or thereafter. Held: P had a profit objective, within the meaning of sec. 183, I.R.C. P's objective was to achieve an economic profit, whether such profit was earned individually or through the corporation. Held, further, with respect to conceded understatements unrelated to the profit-objective issue, Ps are liable for the substantial understatement addition, imposed by sec. 6661, I.R.C.
For Petitioners: George B. Smith and John M. Murray. For Respondent: Joseph Wilkes. HALPERN
HALPERN
MEMORANDUM FINDINGS OF FACT AND OPINION HALPERN, Judge: By notices of deficiency, respondent determined deficiencies and additions to tax against petitioners as follows: Additions to Tax
Year
Deficiency
Sec. 6653(a)(1)
Sec. 6653(a)(2)
Sec. 6661
1984
$ 14,261
$ 713
50% of the
$ 3,565
interest due
on $ 14,261
1985
16,493
825
50% of the
4,123
interest due
on $ 16,493
*484 The deficiency and additions to tax for 1985 were determined solely with respect to petitioner William J. Kuhn, Jr. Unless otherwise noted, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. Hereinafter, when used in the singular, the term "petitioner" is intended to refer to petitioner William J. Kuhn, Jr., in his individual capacity. The issues remaining for decision are: (1) Whether the deductions disallowed by respondent are attributable to a for-profit activity of petitioners, within the meaning of section 183; (2) whether any underpayment is due to negligence or disregard of rules and regulations, within the meaning of section 6653(a); and (3) whether petitioners are liable for the addition to tax for substantial understatement of income tax, imposed by section 6661. FINDINGS OF FACT Some facts have been stipulated and are so found. The stipulation of facts filed by the parties and accompanying exhibits are incorporated by this reference. William J. Kuhn, Jr., is the executor for the estate of his wife, Helen M. Kuhn, who died on October 20, 1984. Petitioner *485 resided in Greenville, Delaware, at the time the petition in this case was filed. Petitioner was the 70-percent owner of Kuhn Construction Co. (the corporation), and each of his three sons was a 10-percent owner during the years here at issue. The corporation performed all types of construction work, throughout the State of Delaware. The corporation files its returns on a fiscal year basis; the corporation's fiscal year ends on February 28. The Purchase
Sometime in the fall of 1982, petitioner was approached by an employee of the Delaware Department of Natural Resources, Rea Wilkie (Wilkie), with whom the corporation had done some work in the past, for the purpose of financing a proposal for the development of a trailer park on two parcels of property in southern Delaware: the Pack property and the Codel property. The Packs (owners of the Pack property), Wilkie, and another individual, Mr. Siegfried, were to join in the investment with petitioner. Petitioner discussed the matter with, among others, his banker and the corporation's bonding company, examined photographs of a California trailer park, read some books, and looked at a trailer park in Lancaster, Pennsylvania. *486 Wilkie procured soil survey reports, dated January 31, 1983, and February 3, 1983, which, among other things, consider the availability of sufficient water for the project. By purchase agreement effective June 1, 1983, petitioner and his wife acquired an option to purchase the Codel property for $ 323,000. The terms of that agreement provided, however, that upon seller's receipt of a bona fide offer to purchase the Codel property (and proper notification to buyers), buyers' (petitioner and his wife) option would terminate 30 days thereafter. By letter dated September 16, 1983, petitioner and his wife were properly notified of a bona fide offer on the Codel property, forcing them to choose between purchasing the Codel property or forfeiting their option. On September 30, 1983, petitioner and his wife purchased the Bligh property (a third parcel of property) for $ 58,000, which property was needed for adequate access to the Codel property. On October 3, 1983, petitioner and his wife exercised their option to purchase the Codel property, which purchase was consummated on December 2, 1983. On December 13, 1983, Edward H. Richardson Associates, Inc., submitted a proposal to petitioner, *487 in response to his request, to prepare a base reference map of the Codel and Bligh properties (collectively, the property), a site analysis, plans for land use, preliminary plans for site development, and final development plans covering such factors as zoning changes, density, development program, market evaluation, phasing, and utility requirements. That work was not performed. Shortly after petitioner's purchase of the property, due to a dispute among the Pack family, petitioner and his wife learned that the Pack property could not be purchased for use in the trailer park project. The Pack property was essential to the development of the trailer park. At that time, petitioner and his wife ceased pursuing the trailer park project. On October 11, 1986, petitioner transferred a 0.1-percent interest in the property to each of his three sons, retaining a 99.7-percent interest. On the same day, petitioner and his three sons conveyed their combined 100-percent interest to a partnership called Kuhn Family Sussex Partnership (the partnership). Rental Activity
On December 15, 1983, the corporation resolved to lease the property from petitioner, at an annual rental of $ 10,000, *488 for the period March 1, 1984, to February 28, 1985. Petitioner determined that rental fee to be appropriate through conversations with his accountant, Rick Newnam. On January 15, 1984, petitioner and the corporation entered into the above-described lease. The lease provided that, if the corporation held over after the expiration of the lease term, with petitioner's consent, the lease would be deemed a month-to-month lease, terminable by either party on 30 days' notice. The lease further provided that the corporation was to pay for all repairs, utilities, etc., and that petitioner was to pay all taxes in connection with the property. The Property
Located on the Bligh property at the time of purchase were a large farmhouse (the Bligh house), at least 50 years old, and, adjacent thereto, an old building that had been a two-room farmhouse but had, more recently, been used as a shed and storage building (the Bligh shed). Located on the Codel property at the time of purchase were a large farmhouse (the Codel house), at least 50 years old, and other buildings, in various states of repair. Adjacent to the farmhouse were a large outdoor swimming pool and a pump house. The Codel *489 property also had a dock on Herring Creek, over which it had in excess of 1,000 feet of frontage. During the years at issue, petitioner owned a vacation home at the beach in Lewis, Delaware, within 10 miles of the property: any personal use by petitioner (or his wife) of the property during the years at issue was insubstantial, and was a factor in neither purchase. Use of the Property
During the years at issue, the corporation used the Bligh house as a bunk house for its employees, the Bligh shed to store small tools, and other portions of the Bligh property to store equipment. The corporation also used the Codel property to store equipment. In addition, a portion of the Codel property farmhouse was used as a corporate office. Benefit to the Corporation
The parties agree that the corporation benefited substantially from the use of the property. Petitioner and respondent agree that the corporation's business in the downstate area of Delaware increased from an average of approximately $ 182,394, for the period 1963 to 1982, to an average of approximately $ 1,464,458, for the period 1983 to 1990. Thus, the corporation's downstate business increased to approximately *490 eight times its earlier level, which increase was directly facilitated by the corporation's use of the property. Expenditures and Deductions
During 1984, petitioner caused to be repaired, rebuilt, or replaced: (1) The Codel property farmhouse, (2) the doors and windows of the Bligh house, (3) the Codel property garage/shed, and (4) the dock. The corporation performed those services for $ 49,656, of which petitioner has paid at least $ 47,500. During each of the years 1983 through 1989, petitioner (either directly or through the partnership) reported a loss on his Federal income tax return from the property as follows: Year
Reported Loss
1983
$ 12,155
1984
28,680
1985
33,617
1986
7,926
1987
17,448
1988
28,171
1989
9,330
For the years 1983 through 1986, petitioner (either directly or through the partnership) reported expenses on his Federal income tax returns respecting the property as follows: 1983
Auto and travel
$    284
Repairs
1,046
Taxes
5,447
Depreciation
5,378
Total expenses
$ 12,155
1984
Insurance
$    400
Taxes
977
Depreciation
27,303
Total expenses
$  28,680
1985
Insurance
$  1,690
Repairs
3,579
Taxes
979
Depreciation
28,469
Total expenses
$ 34,717
1986
Real estate taxes
$  1,191
Insurance
1,173
Depreciation
25,559
Total expenses
$ 27,919
*491 During the years 1983 through 1988, petitioner (either directly or through the partnership) reported gross rental income on his Federal income tax returns as follows: Year
Gross Rental Income
1983
$   0
1984
0
1985
11,100 [1]
1986
19,993
1987
9,970
1988
5,982
OPINION I. Profit Objective
A. The Legal Standard
Section 183(a) provides *492 that "if * * * [an] activity is not engaged in for profit, no deduction attributable to such activity shall be allowed under this chapter except as provided in this section." Simply put, an individual must engage in an activity with the actual and honest objective of making a profit. Dreicer v. Commissioner, 78 T.C. 642, 646 (1982), affd. without opinion 702 F.2d 1205 (D.C. Cir. 1983). The determination of whether an activity is engaged in for profit is to be made by reference to objective standards, taking into account all of the facts and circumstances of each case. Brannen v. Commissioner, 78 T.C. 471, 506 (1982), affd. 722 F.2d 695 (11th Cir. 1984); sec. 1.183-2(b), Income Tax Regs. The objective facts are to be accorded greater weight than petitioner's own statements of intent. Brannen v. Commissioner, supra at 506; sec. 1.183-2(a), Income Tax Regs. The taxpayer's objective must be to achieve a before-tax profit. Estate of Baron v. Commissioner, 83 T.C. 542, 558-559 (1984), affd. 798 F.2d 65 (2d Cir. 1986). B. Petitioners' Argument
*493 Petitioners contend that the property was acquired for use in the aforementioned trailer park development project. Petitioners further contend that, following the determination that such project was no longer viable, the property was retained for future development or appreciation. Accordingly, petitioners argue, the property was rented to the corporation to reduce carrying costs, which are not attributable to such rental activity but to the holding of such property for later development or appreciation. Petitioners therefore contend that all the deductions at issue are attributable to for-profit activity. C. Respondent's Argument
Respondent denies that petitioner acquired the property with any intention of developing it into an income-producing trailer park. Respondent further argues that, even if petitioner did initially intend to develop the property (or hold it for appreciation), such intent did not continue during the years at issue. Respondent argues that petitioner's acquisition (or at least retention) of the property was for the primary purpose of having his controlled corporation use it. Respondent further argues that petitioner charged inadequate rent, had only *494 predictable losses, and intended to benefit the corporation at his own expense. [1] Respondent concludes that petitioner's desire to benefit the corporation, by giving it the advantage of a below-market lease, is inconsistent with the profit-objective requirement of section 183. D. Our Analysis
We are unable to agree completely with either petitioners or respondent. As a preliminary matter, we believe petitioners' contention that the property was initially purchased for the trailer park development project. That observation appears, however, to be of little relevance, because we are unable to conclude that, after that project proved not to be viable, petitioner continued to hold the property for later development or appreciation. *495 Certainly, petitioners have presented no evidence of such an intention. See Rule 142(a). We agree with respondent that petitioner's intention, at that time and during the years at issue, was to pursue an arrangement whereby the corporation would be able to use the property. At this point, we must also deal with respondent's contentions that petitioner's intention was to benefit the corporation, rather than himself, and that such intention is inconsistent with a profit objective. 1. Presence of A Below-Market Lease
Respondent sought to introduce expert testimony that petitioner rented the property to the corporation at a (markedly) below-market rate; respondent's witness was not qualified by the Court, however, and his testimony was not admitted. Nonetheless, petitioner's uninterrupted series of losses from the property, along with the parties' agreement that the corporation substantially benefited from the use of that property, suggest that respondent's contention may be correct. Without so finding, we consider the consequences of assuming a below-market lease. 2. Consequences of a Below-Market Lease
Respondent cites LaMusga v. Commissioner, T.C. Memo. 1982-742, *496 wherein a taxpayer who chose to benefit a related party --his brother -- with a below-market lease was held to lack a profit objective. Respondent argues that, like the taxpayer in LaMusga, petitioner's desire to benefit a related party -- his corporation -- at his own expense is inconsistent with a profit objective. We find LaMusga to be distinguishable from the case at hand. The desire to benefit one's own corporation is very much unlike the desire to benefit gratuitously one's relation. While as a rule the law considers an individual and his controlled corporation to be distinct entities (for purposes of liability and taxation, among others), many taxpayers are largely unconcerned with that distinction. Petitioner, unconcerned with technical distinctions between individuals and corporations, anticipated that he would be the one to benefit by the corporation's use of the property. Both at trial and on brief, petitioner has emphasized the substantial business the corporation has been able to do, as a result of using the property. We think that petitioner was largely indifferent as to the rental price (considering the matter a mere accounting necessity lacking economic *497 importance) and was largely indifferent as to whether he or his corporation got the better end of that deal. That seems consistent with petitioner's having determined the appropriate rental through conversations with his accountant. What we believe petitioner did intend was to profit from the use of that property: the degree to which he was to benefit directly (individually) or indirectly (through the corporation) was of little concern. We hold that petitioner had a profit objective within the meaning of section 183. We find that conclusion bolstered by the conspicuous absence of any other objective: if petitioner did not intend to earn an economic profit from the property, we cannot imagine what he may have intended. Respondent concedes that personal use was not petitioner's motivation. Further, there would not appear to be any gift motive, as in LaMusga, since petitioner anticipated that he, in any event, would be the one to profit. [2] Moreover, respondent has suggested no tax benefit to petitioner of increasing both the corporation's income and his own losses; in fact, since we presume that the corporation's income would here be subject to an additional level of taxation, *498 we would think petitioner's motivation would be the reverse. Of course, it should be noted that, whatever his profit objective, a taxpayer ought not have the power to reallocate income between himself and his corporation by means of a below-market lease (not even through inadvertence or apathy, as may here be the case). We think that, in such situations, the taxpayer may not avoid tax on the fair rental income of his property, by giving (at little or no real sacrifice) an excessively good deal to his corporation. In such a case, we would view the taxpayer as renting property to his corporation at the market rental *499 rate, and then (either intentionally or inadvertently) returning a portion of that amount. Indeed, there is a statutory provision permitting the Secretary to make that allocation. See sec. 482; cf. Central Bank of the South v. United States, 834 F.2d 990 (11th Cir. 1987). Respondent has not, however, in her notice of deficiency, in her answer, at trial, nor on brief raised section 482. The only question presented for our decision (other than with regard to additions to tax) is whether petitioner had a profit objective. [3]
II. Additions to Tax
Respondent has conceded, in the event petitioner is determined to have a profit objective for the years at issue, all additions to tax, with the exception of the section 6661 *500 addition for substantial understatement, which we now consider (and which is still relevant because of concessions made by petitioners). A. General Rule
Section 6661(a) provides that "If there is a substantial understatement of income tax for any taxable year, there shall be added to the tax an amount equal to 25 percent of the amount of any underpayment attributable to such understatement." Section 6661(b) defines a substantial understatement as one exceeding the greater of (i) 10 percent of the tax required to be shown on the return, or (ii) $ 5,000. As a general rule, the understatement is defined as the excess of the amount of tax required to be shown on the return over the amount of tax imposed which is actually shown on the return (reduced by any rebate, within the meaning of section 6211(b)(2)). Sec. 6661(b)(2)(A). Under certain circumstances, however, the understatement will, for the purposes of section 6661, be reduced. Petitioner has conceded part of respondent's determinations respecting the years at issue and concedes that, absent the application of a special rule for reducing the understatements, those understatements are substantial understatements. B. *501 Special Rule for Reducing Understatements
1. Statement of Rule
Section 6661(b)(2)(B) provides that, for purposes of section 6661, the understatement shall be reduced by that portion thereof attributable to either: (i) the tax treatment of any item by the taxpayer if there is or was substantial authority for such treatment, or (ii) any item with respect to which the relevant facts affecting the item's tax treatment are adequately disclosed in the return or in a statement attached to the return. Petitioners bear the burden of proving that either of the above alternative requirements has been satisfied, in order to have the understatement reduced for purposes of section 6661. Rule 142(a). 2. Application of Rule
Petitioners have conceded that petitioner realized $ 819 in capital gain income which was not reported on his 1984 return. In addition, petitioners have conceded that depreciation deductions of $ 7,427 in 1984 and $ 9,895 in 1985 were improperly claimed on petitioner's Federal income tax returns. More specifically, petitioner (1) overstated the depreciable basis of the various structures and improvements on the property, and (2) used an improper method *502 of depreciation. We must consider whether petitioners have demonstrated substantial authority or adequate disclosure, within the meaning of section 6661(b)(2)(B). a. Substantial Authority
Petitioners seem to argue only that there is substantial authority that petitioner had a profit objective. Petitioners argue that the cases cited in the argument section of the brief (which section only addresses profit objective) are both controlling and constitute substantial authority. Petitioners fail to explicitly mention the concessions as to capital gain income and depreciation, and certainly have offered no substantial authority for those items. Petitioners fail to carry their burden of proof. Rule 142(a). b. Adequate Disclosure
Again, petitioners' argument is sparse. Petitioners cite several revenue procedures (Rev. Proc. 83-21, 1983-1 C.B. 680, Rev. Proc. 84-19, 1984-1 C.B. 433, and Rev. Proc. 85-19, 1985-1 C.B. 520) listing certain items that automatically satisfy the disclosure requirement of section 6661(b)(2)(B). Petitioners conclusorily assert: "Items listed by these revenue procedures *503 as not requiring additional disclosure, for purposes of Section 6661, include items or categories of items for which our taxpayer has claimed a deduction." Petitioners fail to specify which items listed in those revenue procedures obviate the disclosure requirement in this case. Observing nothing on the face of those revenue procedures supporting petitioners' argument, we hold that petitioners have failed to meet their burden of proof as to adequate disclosure. Rule 142(a). Petitioners also argue that even where the revenue procedures are not satisfied, the adequate disclosure requirement is satisfied if the information on the return is sufficient to enable the Internal Revenue Service (the Service) to identify the potential controversy involved. Accordingly, petitioners assert that the Schedules E of the returns at issue, and the accompanying schedules, adequately apprised the Service of the nature and magnitude of petitioner's activity. That assertion is insufficient to carry petitioners' burden of proof. Rule 142(a). Decision will be entered under Rule 155. Footnotes
1. Petitioner's Federal income tax return shows only $ 1,100 of income respecting the property for 1985, which sum is attributable to sharecropping, and is unrelated to petitioner's rental of that property to the corporation. However, petitioner's accountant testified that $ 10,000 of rental income was mistakenly attributed to a separate property rented by petitioner to the corporation. There is evidence that the rental price of that other property is $ 15,000 per annum; yet, on petitioner's 1985 Federal income tax return, $ 25,000 of rental income is attributed thereto. In the absence of any countervailing argument or evidence by respondent, we accept petitioner's explanation. We note also that petitioner's 1985 loss attributable to the property would therefore be $ 23,617, as opposed to $ 33,617, indicated earlier.↩
1. Moreover, respondent argues that, contrary to petitioner's 1985 and 1986 returns, the corporation paid petitioner no compensation (in cash or otherwise) on account of its use of the property during those years. Petitioners concede only that no cash↩ payments were made in 1985 and 1986.
2. We are aware that petitioner's sons were each 10-percent owners of the corporation and that any benefit to the corporation would benefit petitioner's sons (to the extent of their interests) at petitioner's expense. However, respondent has not argued, nor would we believe on the facts of this case, that petitioner's objective was to benefit his children by granting the corporation a below-market lease.↩
3. Indeed, respondent has by stipulation agreed that a portion of the depreciation and all of the insurance and repair expense claimed by petitioner are allowable to petitioner for the years in question if we decide that, for those years, petitioner had a profit objective.↩